574 A.2d 100

**Lorenzo GOLDMAS, Appellee,**

v.

**ACME MARKETS, INC. Appellant.**

Superior Court of Pennsylvania.

Argued March 7, 1990.

Filed May 3, 1990.

246

John O'Brien, Philadelphia, for appellant.

David E. Sternberg, Philadelphia, for appellee.

Before McEWEN, MONTEMURO and CERCONE, JJ.

MONTEMURO, Judge:

This appeal, filed by Acme Markets, Inc., stems from the trial court's refusal to grant to Acme a judgment notwithstanding the verdict or a new trial following a December 1988 jury trial in the Court of Common Pleas of Philadelphia County. We affirm.

The appellee, Lorenzo Goldmas, instituted a negligence action against Acme following his fall at an Acme store on April 11, 1983. He claimed that his fall was caused by negligently maintained conditions at the store. Goldmas claimed that, in addition to mental anguish, he had been physically injured as follows:

> As a result of the accident aforementioned, husband-plaintiff sustained multiple injuries including, but not limited to, a brain concussion resulting in post concussion syndrome; mid thoracic and cervical strain, right elbow strain, and right thumb metacarpal strain and other multiple injuries of his head, neck, shoulders, back, torso, arm and legs, their bones, cells, tissues, nerves, muscles, roots and functions; and shock and injury to his nerves and nervous system, some or all of which husband-plaintiff has been advised are or may be permanent in nature.

R.R. at 7a. Acme denied the allegations of negligence set forth against them, and, by way of new matter, set forth claims of comparative negligence and assumption of the risk. Following a two day jury trial, a verdict in the amount of $25,000.00 was returned in favor of Goldmas.

■ On appeal, Acme presents six issues for our review. First, Acme claims that the trial court abused its discretion in not charging the jury in conformance with the decision of this Court in *Matteo v. Sharon Hill Lanes, Inc.*, 216 Pa.Super. 188, 263 A.2d 910 (1970). *Matteo* is distinguishable from the present case. It is well established that although the defendant has the burden to prove the contributory negligence of the plaintiff, "[i]f in presenting his case against the defendant the plaintiff reveals factors which convict him of contributory negligence he may not recover." *Id.*, 216 Pa.Superior Ct. at 191, 263 A.2d at 912 (citations omitted). In finding that the trial court had erred in charging the jury in *Matteo* so as to necessitate the grant of a new trial, we opined:

> The charge of the court makes no mention of the possibility that the facts in the plaintiff's case might be used to show his contributory negligence. In fact, a reading of the charge leaves the impression that the defendant must produce evidence of the plaintiff's contributory negligence from some other source. The last paragraph of the above quoted charge confirms this impression when it says, "Now, if you believe that by a fair preponderance of the evidence, and [sic] that the plaintiff was guilty of conduct *attributed to him by the defendant's evidence,* then such conduct would be negligence.

*Id.*, 216 Pa.Superior Ct. at 192–193, 263 A.2d at 913 (emphasis in original).

In the instant case, we have reviewed the jury charge as a whole and have found no language which would have indicated to the jury that only the evidence presented by the defendant could be considered in deciding whether Goldmas had been negligent. In fact, we find that the court's instructions complied with Acme's request pursuant to *Matteo.* The trial court instructed the jury as follows:

> In other words, negligence is the failure to do ... something which a reasonably careful person would do, or doing of something which a reasonably careful person would not do, and it is up to you, the jury to determine

what a reasonably careful person would do under all the circumstances.

\* \* \* \* \* \*

Now, just as Acme Market has a legal responsibility to exercise reasonable care for persons lawfully on their premises, persons legally on their premises have a responsibility to exercise reasonable care for their own protection. This is what is called contributory negligence, if you don't.

That is to say Acme Market, you could find that they were negligent *from the evidence.* You could also find *from the evidence* that the Plaintiff was negligent. That's up to you depending on what the evidence says....

\* \* \* \* \* \*

... take all the evidence on one side *that you think supports plaintiff's case* and put it on one side of the scale, and all the rest of the evidence on the other side. If the scale tips in favor of the plaintiff in the slightest degree he has met his burden of proof and he may recover.

Obviously, if the scale remains even and certainly if it flips in favor of the defendant, he has not met his burden of proof and may not recover.

Same standard applies to the defendant on the issue of contributory negligence. If they tip that scale in the slightest degree in their favor, then they have established contributory negligence....

R.R. 170a, 174a–175a (emphasis added). The jury instruction given in the case at bar correctly informed the jury that it was their function to decide what evidence was supportive of Goldmas's claim of negligence, and which was supportive of Acme's claim of contributory negligence, without indicating any restriction on which party presented the evidence to the jury in the first place.

This case is analogous to *Calhoun v. Jersey Shore Hospital,* 250 Pa.Super. 567, 378 A.2d 1294 (1977), wherein the

defendant hospital claimed on appeal that the trial court had erred in failing to follow the *Matteo* decision and to thus advise the jury that the plaintiff's case may establish contributory negligence without the production of any evidence by the defendant. This Court in *Calhoun* rejected this claim of trial court error and in so doing, we stated:

> During the charge the judge said: "You must, therefore, determine whether the Plaintiff was negligent, in that as an ordinarily prudent person, *under all of the circumstances present,* she failed to exercise reasonable care for her own protection." N.T. 134 (emphasis added). Later in the charge the judge said: "If, *after considering all of the evidence,* you are unable to decide whether or not a fact occurred or not, then you would have to resolve that issue against the person having the burden of proof on that issue." N.T. 135 (emphasis added). It therefore appears that counsel's request that the jury be instructed to consider all of the evidence was complied with.

*Calhoun, supra* at 573–574, 378 A.2d at 1297.

■ As a second issue, Acme contends that the trial court erred in not granting a new trial on the grounds that the jury verdict was irreconcilable, evidencing juror confusion. Acme bases this claim upon the jury's answer to question five on the jury verdict slip, which was not read in court based upon the jury's answer to the preceding questions:

Question 1:

Do you find that the defendant was negligent?

Yes _X_ No___

If you answer Question No. 1 "No", the plaintiff cannot recover and you should not answer any further questions and should return to the courtroom.

Question 2:

Was the defendant's negligence a substantial factor in bringing about the plaintiff's harm?

Yes_X_ No___

If you answer Question No. 2 "No", the plaintiff cannot recover and you should not answer any further questions and should return to the courtroom.

Question 3:

Was the plaintiff contributorily negligent?

Yes___ No X

If you answer Question No. 3 "No" proceed to Question No. 5.

Question 4:

If you answered Question No. 3 "Yes" was the plaintiff's contributory negligence a substantial factor in bringing about his harm?

Yes___ No___

Question 5:

In taking the combined negligence that was a substantial factor in bringing about the plaintiff's harm as 100%, what percentage of that causal negligence was attributable to the defendant and what percentage was attributable to the plaintiff?

Percentage of causal negligence attributable to defendant (Answer only if you have answered "Yes" to Questions 1 and 2). ___75%

Percentage of causal negligence attributable to the plaintiff (Answer only if you have answered "Yes" to Questions 3 and 4) _–%

State the amount of damages, if any, sustained by the plaintiff as a result of the accident, without regard to and without reduction by the percentage of causal negligence, if any, that you have attributed to the plaintiff.

$ 25,000.00

R.R. 2229a–230a.

"It is well established law in Pennsylvania that there is a presumption of consistency with respect to a jury's findings which can only be defeated when there is no reasonable theory to support the jury's verdict." *Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 440, 539 A.2d 871, 875 (1988) (citation omitted). The instant case is unlike the

situation addressed by our Supreme Court in *Ferrick Excavating v. Senger Trucking*, 506 Pa. 181, 484 A.2d 744 (1984). In *Ferrick*, the jury had, in answer to special interrogatories, determined that while the plaintiff had been contributorily negligent, this negligence had not been a proximate cause of the plaintiff's damages. However, the jury, when asked to determine the question of causal negligence, attributed 80% to the defendant and 20% to the plaintiff. In affirming this Court's grant of remittitur, the Supreme Court reasoned:

> Ferrick [plaintiff] would have it that all questions of negligence and causation are settled as of the answer to question 3. There is, of course, no reason why this should be so. Questions 4 and 5 do exist, and unless they are to be regarded as mere surplusage, they set up an irreconcilable inconsistency between the finding in 4 that Ferrick's negligence was not a proximate cause of the injury and the finding in 5 that Ferrick's proximate negligence was 20%.

*Id.*, 506 Pa. at 187, 484 A.2d at 747.

Instantly, the presumption of the consistency of the jury verdict may stand. There is no question as to the jury's finding that Acme was negligent, and that the negligence of Acme was a proximate cause of Goldmas's injuries. Thus, Acme is properly held liable for all of Goldmas's damages. Further, there is no confusion apparent on the verdict slip with reference to Goldmas's contributory negligence. This is the crux of Acme's issue. Acme is claiming that because the jury placed the "75%" in question 5, they intended to make a finding that Goldmas was contributorily negligent. On the contrary, the defense of contributory negligence was *consistently* rejected by the jury in questions three, four, and five. Indeed, in question 5, the jury placed a line through the answer blank indicating that the question seeking a determination of the plaintiff's causal negligence was inapplicable or irrelevant. Thus, the "75%" figure appearing in question 5 is mere surplusage and has no effect on the valid verdict rendered by the jury. We find no error in

the trial court's failure to grant Acme a new trial on this claim.

■ Next, Acme claims that the trial court erred in not instructing the jury to disregard certain statements made by Goldmas's counsel during his closing argument. Specifically, Acme claims that it was prejudiced by counsel's claims that Goldmas had *unpaid* medical bills. Apparently, Acme contends that this argument was not supported by the evidence and was made by Goldmas's counsel for the sole purpose of eliciting juror sympathy. The trial court dismissed this claim on the grounds that there is evidence of medical bills in the record. A review of the exhibits admitted during trial does include some medical bills. In any event, we are convinced that even if some of these bills were actually paid at the time of trial, Acme was not unduly prejudiced by counsel's closing remarks. There is no dispute that Goldmas received medical treatment for which he was charged, and for which he was entitled to seek contribution in his suit against Acme. Under the circumstances, Acme was not prejudiced by counsel's comments even assuming, *arguendo*, that some of the medical bills had been paid.

■ We likewise find no merit in Acme's claim that the trial court erred in instructing the jury concerning Acme's duty under the law of negligence. "It is now well established in this Commonwealth that portions of a jury charge are not reviewed for error in isolation. Rather, an appellate court is bound to examine the charge in its entirety against its evidentiary background. From the examination we must determine, first, whether any error was committed and, if so, whether the error was prejudicial to the complaining party." *McKee By McKee v. Evans*, 380 Pa.Super. 120, 143–144, 551 A.2d 260, 271 (1988) (citations omitted). Instantly, we find no error in the court's accurate and precise explanation regarding Acme's duty under the circumstances of the instant case. Contrary to Acme's claim that the court indicated that Acme was an insurer of the safety of its customers, the court stated to the jury:

So, you have to determine what's reasonable for them in the circumstances. Again, every accident doesn't cause liability. Every time there is a spill they are not responsible. You have to determine that the spill was of such a nature that they either knew about it or they should have known about it....

R.R. at 169a.

■ During the trial, Acme attempted to introduce a letter from a physician, Dr. Zimmerman. Acme claimed that the introduction of this evidence was necessitated by surprise resulting from Goldmas's trial testimony regarding his glaucoma. R.R. at 135a. The letter purportedly states that Dr. Zimmerman treated Goldmas for glaucoma while he was in Chestnut Hill Hospital during April 1983, and thereafter. The trial court rejected Acme's contention that it was "surprised" by Goldmas's testimony, and refused to admit the letter on the grounds that it was inadmissible hearsay. Acme is entitled to no relief on this claim. Goldmas testified that he was seen by Dr. Zimmerman for glaucoma on the last day of his stay at Chestnut Hill Hospital, and that Dr. Zimmerman had advised him that he had glaucoma in one eye. *Id.* at 66a and 82a. Further, hospital records admitted into evidence indicate that Goldmas was suffering from glaucoma at the time he fell in the Acme store. *Id.* at 258a. Dr. Zimmerman's letter was thus cumulative evidence which did not come within an exception to the hearsay rule. The jury was provided with ample evidence concerning Goldmas's glaucoma condition, which existed at the time of his fall, and the jury had in evidence hospital records indicating that Goldmas did *not* suffer eye injury as a result of his fall. *Id.* at 234a. With this evidence, the jury was thus able to evaluate Goldmas's testimony in light of other evidence, specifically hospital records, which did indicate that part of his stay at Chestnut Hill Hospital was focused upon his pre-existing glaucoma condition which obviously was not related to his fall. *See* R.R. at 291a, 294a, 300a, 301a.

■ Finally, Acme claims that the verdict rendered by the jury was against the weight of the evidence. A new trial will not be granted unless the verdict is so contrary to the evidence as to shock the court's sense of justice. We find no error in the trial court's refusal to grant Acme relief. Acme's claim is based upon its review of the testimony of Goldmas, which it argues contains "glaring 'inconsistencies' [which] elevate ... plaintiff's testimony into the realm of perjury...." Brief for Acme at 33. Credibility is for the finder of fact to determine. Although the jury may not have believed all of the testimony of Goldmas, it was free to accept some of the testimony as credible while it, at the same time, rejected other portions of the testimony. We note that many of the inconsistencies in Goldmas's testimony emphasized by Acme concern collateral issues: the number of Goldmas's children, his birthplace, his marriage history, his knowledge of his own body weight. Other inconsistencies may well have been dismissed as inconsequential by the jury, such as Goldmas's testimony regarding which hand he had used to reach up to the grocery shelf and what type of glass he noticed on the floor after his fall, in light of the rest of his testimony concerning his fall in the Acme store. *See* R.R. at 47a–48a. Further, Mr. Williams, store supervisor for Acme, testified that he had approached Goldmas immediately after his fall in the store and had observed oil on the floor. *Id.* at 125a–126a. Under these circumstances, the jury's verdict was not against the weight of the evidence. A new trial should not be granted on a mere conflict in the testimony. *See Baldino v. Castagna,* 505 Pa. 239, 478 A.2d 807 (1984).

Order affirmed.